**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| JILL and ADAM TROWER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:22-CV-00077-JAR |
| ) | |
| ANTONY BLINKEN, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Antony Blinken, Alejandro Mayorkas, Ur Mendoza Jaddou, Carol Cox, and the United States of America's Motion to Dismiss. (Doc. 18). The motion is fully briefed and ready for disposition. For the reasons discussed below, the motion will be denied.

**I.   BACKGROUND**

M.S. was abandoned at two months old near a garbage pile in Kinshasa, Democratic Republic of the Congo ("DRC") on April 10, 2018.[1] M.S. was subsequently placed in the Ma Famille Orphanage in Kinshasa, where he still resides. Plaintiffs Jill and Adam Trower, American citizens, learned of M.S. through their adoption agency and began the process to adopt him in summer 2018. On October 5, 2018, they submitted an I-600A Application for Advance Processing of an Orphan Petition ("I-600A Petition") to United States Citizenship and Immigration Services ("USCIS"). Their application was approved on November 15, 2018. Approval of the I-600A Petition allowed Plaintiffs to file an I-600 Petition to Classify Orphan as Immediate Relative ("I-

---

[1] Unless otherwise noted, all facts in this section are taken from Plaintiffs' Complaint (Doc. 1) and accepted as true for purposes of this motion to dismiss.

1

600 Petition"). (Doc. 1-1). While Plaintiffs navigated the United States' adoption requirements, they also followed the adoption process of the DRC. On May 21, 2019, the Children's Court of Kinshasa approved their adoption of M.S.

Plaintiffs' initial bureaucratic success proved short-lived. On May 29, 2019, Plaintiffs filed their I-600 Petition. On July 22, 2019, USCIS forwarded the I-600 Petition to the United States Embassy in Kinshasa ("Kinshasa Embassy") so it could perform an I-604 investigation. *See* 8 C.F.R. § 204.3(k) (providing for an I-604 investigation by a consular officer in non-Hague Adoption Convention cases). On or about July 30, 2020 – over one year later – the Kinshasa Embassy returned the case to USCIS. Approximately six months later, USCIS issued a Notice of Intent to Deny ("NOID") Plaintiffs' I-600 Petition on the grounds that (i) the "final adoption was not completed in accordance with the laws of the foreign-sending country" as required under 8 C.F.R. § 204.3(d)(1)(iv) and (ii) Plaintiffs failed to demonstrate M.S. was abandoned as defined by 8 C.F.R. § 204.3(b). (Doc. 1-3 at 17-19). Plaintiffs submitted an extensive response to the NOID on March 22, 2021. Finally, on December 22, 2021, USCIS issued a Notice of Decision ("NOD") denying Plaintiffs' I-600 Petition on similar grounds to those raised in the NOID. (Doc. 1-4).

On January 20, 2022, Plaintiffs filed suit in this Court appealing the denial of their I-600 Petition under the Administrative Procedure Act ("APA"). (Doc. 1). Plaintiffs allege that the denial of their I-600 Petition is "arbitrary and capricious, an abuse of discretion, lacks substantial evidence, and is otherwise not in accordance with law." (*Id.* at ¶ 44). On April 13, 2022, Defendants filed the instant motion to dismiss. (Doc. 18). Defendants seek dismissal under Fed. R. Civ. P. 12(b)(1) due to Plaintiffs' alleged lack of standing or, alternatively, under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.     LEGAL STANDARDS

Fed. R. Civ. P. 12(b)(1)

When a party challenges this Court's subject matter jurisdiction, at issue is this Court's "very power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (citation omitted). Dismissal under Rule 12(b)(1) is appropriate when a party successfully challenges subject matter jurisdiction on the face of the complaint or on the facts. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). This Court has substantial authority and is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Little Otters of Love, LLC v. Rosenberg*, 724 F. App'x 498, 501 (8th Cir. 2018) (per curiam) (citation omitted). In deciding a motion under Rule 12(b)(1), this Court "must distinguish between a facial attack – where it looks only to the face of the pleadings – and a factual attack – where it may consider matters outside the pleadings." *Croyle by and through Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018). In either case, Plaintiffs bear the burden of proving the existence of subject matter jurisdiction. *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019).

Defendants have not clarified if they bring a facial or factual attack on jurisdiction. In stating the applicable legal standard, Defendants express that this Court "must accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party." *Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985, 988 (8th Cir. 2010) (citation omitted). Because this standard mirrors that applicable to a facial attack on jurisdiction, the Court construes Defendants' motion as raising a facial attack. *See Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (party opposing facial attack receives same protections as it would defending against Rule 12(b)(6) motion).

3

The parties appear to agree that this Court may consider the Certified Administrative Record ("CAR") (Docs. 19-1, 19-2) and various documents attached to Plaintiffs' response to the extent they concern interpretation of DRC law. (Docs. 26-1 – 26-25). *See Ashford v. Douglas Cty.*, 880 F.3d 990, 992 (8th Cir. 2018) (per curiam) ("When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings."); *see also Chin-Teh Hsu v. New Mighty U.S. Tr.*, Civ. No. 10-1743 (JEB), 2020 WL 588322, at *3-4 (D.D.C. Feb. 6, 2020) (considering various materials related to foreign law on motion to dismiss). The Court notes, however, that it may not yet consider statements outside the pleadings to resolve disputed facts. *See Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 40 (D.D.C. 2010) ("The Court thus excludes all statements made in declarations concerning facts at issue in this case as matters outside the pleadings. Declarations concerning how Israeli law should be interpreted, however, do not present matters outside the pleadings; instead, they inform the Court on matters *within* the pleadings."). [2]

Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the

---

[2] Plaintiffs contend that Defendants "impermissibly go outside the pleadings" in making certain arguments. (Doc. 26 at 4). Defendants reply that the Court may consider matters outside the pleadings but acknowledge that they may not raise "purely factual matter[s] not embracing the issue of DRC law." (Doc. 29 at 3). Rule 44.1 broadly permits consideration of virtually any materials which may assist in a determination of foreign law. While recognizing that the line between facts and law is sometimes blurred, the Court has only considered materials outside the pleadings which assist the Court in interpreting DRC law.

4

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted). When ruling on a motion to dismiss under Rule 12(b)(6), the district court must "accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

## III. ANALYSIS

Plaintiffs' Standing

The Court addresses standing first because it "is a threshold inquiry that eschews evaluation on the merits." *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007) (citation omitted). The Constitution limits the judicial power of the United States to "Cases" and "Controversies." U.S. CONST. art. III, § 2. The doctrine of standing is "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The Supreme Court has held that the "irreducible constitutional minimum of standing" has three elements: (1) plaintiff must have suffered an injury in fact; (2) a causal connection must exist between the injury and conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted). The party invoking federal jurisdiction bears the burden of establishing standing. *Id.* at 561. "On a motion to dismiss, therefore, the

5

plaintiffs must allege sufficient facts to support a reasonable inference that they can satisfy the elements of standing." *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 718 (8th Cir. 2021).

Defendants do not dispute that Plaintiffs have adequately alleged an injury in fact. The question before this Court is whether Plaintiffs' injury is fairly traceable to denial of the I-600 Petition and likely to be redressed by a favorable ruling. Article III "requires no more than *de facto* causality." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019) (citation omitted); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement for Article III standing."). The Supreme Court has expressed its "reluctan[ce] to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013). The connection between the challenged action and identified harm "cannot be overly attenuated." *Agred Found. v. U.S. Army Corps of Eng'rs*, 3 F.4th 1069, 1073 (8th Cir. 2021). But the Supreme Court has also found that standing exists where an injury relies "on the predictable effect of Government action on the decisions of third parties." *New York*, 139 S. Ct. at 2566.

Defendants argue that even if Plaintiffs have their I-600 Petition approved, they will be unable to complete the adoption process and unite with M.S. in the United States. Due to the supposed DRC prohibition on intercountry adoption, Defendants suggest that Plaintiffs will have difficulty both obtaining an IR-3 visa from the Department of State and ultimately extracting M.S. from the DRC. Plaintiffs dispute these claims and contend that the IR-3 visa application process "simply verifies all necessary documentation for production of the visa" and ensures no ineligibilities exist under 8 U.S.C. § 1182. (Doc. 26 at 24 n. 28). Plaintiffs further argue that USCIS has approved and the DRC has permitted numerous adoptions despite the apparent ban. (*Id.* at 24;

6

Doc. 1 at ¶ 27). In short, Plaintiffs respond that this "lawsuit is about an I-600 denial, not events *subsequent* to the I-600." (Doc. 26 at 23).

Denial of the I-600 Petition is the immediate obstacle to Plaintiffs finalizing their adoption of M.S. and obtaining a visa for his entry to the United States. Defendants acknowledge that per the Foreign Affairs Manual ("FAM"), the I-600 "is used to document a particular child's classification as an orphan under [the Immigration and Nationality Act] § 101(b)(1)(F)." (Doc. 29 at 19) (quoting 9 FAM 502.3-3(C)(3)(a)). An orphan "can only be issued an immigrant visa if he or she is the beneficiary of an approved Form I-600." *Id.*; *see generally Skalka v. Kelly*, 246 F. Supp. 3d 147, 149-150 (D.D.C. 2017) (describing foreign adoption process and I-600 petitions). Defendants emphasize that approval of an I-600 Petition requires "[e]vidence of a full and final adoption under the laws of the foreign sending country." 9 FAM 502.3-3(B)(3)(1); *see also* 8 C.F.R. § 204.3(d)(1)(iv) (requiring evidence of adoption abroad in accordance with the laws of the foreign-sending country).

It appears to the Court that Defendants' challenge to Plaintiffs' standing is intertwined with the merits of Plaintiffs' claims. As discussed extensively below, Defendants contend that DRC law bars Plaintiffs' adoption. Defendants admit that "the fate of Plaintiffs' Form I-600 is, in fact, tied directly to the DRC law issues." (Doc. 29 at 20). In challenging this Court's subject matter jurisdiction, Defendants argue that Plaintiffs will be unable to obtain an IR-3 visa or DRC approval of the adoption for the same reasons relating to DRC law. Defendants' description of the "limited question" before the Court makes this apparent: "does DRC law permit adoptions at all, such that the compelling (or voluntary) granting of a Form I-600 might actually lead to a tangible result?"

7

(Doc. 29 at 19 n. 8). As addressed below, however, the Court believes further analysis of DRC law is necessary before it makes a Rule 44.1 judgment.[3]

Though not addressed by the parties, other courts considering similar circumstances have consistently found that a party challenging denial of an immigration petition has standing to proceed. In *Patel v. U.S. Citizen and Immigr. Servs.*, USCIS denied the plaintiff's petition for an employment visa per 8 U.S.C. § 1153(b)(3). 732 F.3d 633 (6th Cir. 2013). Under the Immigration and Nationality Act ("INA"), there is a three-stop process for an alien to become a permanent resident by obtaining an employment visa. The plaintiff appealed the denial of his petition for employment visa, the second step of the process. USCIS claimed that plaintiff lacked standing because "[e]ven if the petition's denial is set aside . . . it still must approve [plaintiff's] application for an adjustment of status" at the third step. *Id.* at 638. Therefore, USCIS argued, "this suit would not redress [plaintiff's injury]." *Id.* The Sixth Circuit rejected this logic, holding that the "lost opportunity is itself a concrete injury – and a favorable decision would redress it." *Id.*; *see also Kurapati v. U.S. Bureau of Citizenship and Immigr. Servs.*, 775 F.3d 1255, 1260 (11th Cir. 2014) (holding deprivation of opportunity to apply for adjustment of status is fairly traceable to USCIS' revocation and would be redressed by favorable decision); *Rossville Convenience & Gas, Inc. v. Garland*, Civ. No. 20-2218 (JDB), 2021 WL 5865446, at *7 (D.D.C. Dec. 10, 2021) (citation omitted) ("Losing a sufficient opportunity to receive an immigrant visa . . . is itself a concrete injury cognizable by the federal courts.").

It appears that Plaintiffs' ability to adopt M.S. turns primarily on DRC law. USCIS denied Plaintiffs' I-600 Petition in part on the grounds that the DRC supposedly does not currently permit

---

[3] The Court also believes this argument presents fact issues. Defendants claim that Plaintiffs will be unable to obtain an exit permit issuance for M.S., but the record reflects that there were 45 adoptions from DRC to the United States from 2017-2019. (Doc. 19-2 at 9).

intercountry adoptions. Plaintiffs have suffered an injury in fact by having their I-600 Petition denied. Such injury is fairly traceable to Defendants' conduct and likely redressable by a favorable judicial decision, which would require this Court reaching a contrary interpretation of DRC law. *See Miller v. Thurston*, 967 F.3d 727, 734 (8th Cir. 2020) (internal quotations omitted) ("[S]tanding in no way depends on the merits of the claim. Rather, we must assume that on the merits the plaintiffs would be successful in their claims."); *see also ASARCO, Inc. v. Kadish*, 490 U.S. 605, 624 (1989). At this juncture, Plaintiffs have lost their opportunity to obtain a visa and unite with M.S. in the United States due to Defendants' denial of the I-600 Petition. Accordingly, accepting all allegations in the Complaint as true, a reasonable inference can be made that Plaintiffs have satisfied the elements of standing. *Vaught*, 8 F.4th at 718.

Fed. R. Civ. P. 44.1

Rule 44.1, adopted in 1966, provides that a "party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination of foreign law must be treated as ruling on a question of law." As the Supreme Court recently explained, Rule 44.1 "fundamentally changed the mode of determining foreign law in federal courts." *Animal Sci. Prods. v. Hebei Welcome Pharm. Co. Ltd.*, 138 S. Ct. 1865, 1873 (2018). The "obvious" purpose of the changes made by Rule 44.1 was "to make the process of determining alien law identical with the method of ascertaining domestic law to the extent that it was possible to do so." *Id.* (quoting 9A C. Wright & Miller, FED. PRAC. & PROC., § 2444 at 338-342 (3d ed. 2008)); *see generally* Alejandro J. Garcia, Note, Lex Incognita *No Longer: Making Foreign Law Less Foreign to Federal Courts*, 108 GEO. L.J. 1026, 1031-35 (2020) (discussing history of Rule

9

44.1). Put another way, Rule 44.1 "unshackles courts and litigants from the evidentiary and procedural requirements that apply to factual determinations." *de Fontbrune v. Wofsky*, 838 F.3d 992, 997 (9th Cir. 2016).

The parties acknowledge that Plaintiffs have raised an issue of foreign law. (Doc. 11 at ¶¶ 4-5; Doc. 13 at 3). *See also* Advisory Committee's 1966 Note on Fed. R. Civ. P. 44.1 ("In some situations the pertinence of foreign law is apparent from the outset."). This Court "may consider any relevant material or source" when assessing foreign law. Fed. R. Civ. P. 44.1. *See also Reid v. Doe Run Res. Corp.*, 74 F. Supp. 3d 1015, 1026 (E.D. Mo. 2015) (citation omitted) ("[Rule 44.1] requires an open and unstructured dialogue among all concerned."). "Most often, foreign law is established through written or oral expert testimony accompanied by extracts from foreign legal material." *Estate of Botvin v. Islamic Republic of Iran*, 873 F. Supp. 2d 232, 240 (D.D.C. 2012) (internal quotations omitted); *see also Gan Teck Invs. Pte. Ltd. v. Thermal Constr. Co. LLC*, No. 20-CV-1050-CJW-MAR, 2022 WL 1321290, at *5 (N.D. Iowa May 3, 2022) (finding court may consider affidavits of foreign law experts under Rule 44.1). *But see Sunstar, Inc. v. Alberto-Culver Co.*, 586 F.3d 487, 495-96 (7th Cir. 2009) (criticizing use of foreign law experts).

The parties dispute who has the burden to prove foreign law. Defendants emphasize that the "burden of proof rests squarely upon Plaintiffs in establishing that the laws of the [DRC] favor them." (Doc. 19 at 12). Plaintiffs, relying heavily on the Ninth Circuit's recent decision in *de Fontbrune*, contend that Rule 44.1 "places no burden of proof on a party." (Doc. 26 at 4). Having performed a thorough review of applicable precedent, it appears to the Court that the answer lies somewhere between the parties' positions. Courts applying Rule 44.1, including those in the Eighth Circuit, routinely state that the party raising an issue of foreign law "carries both the burden of raising the issue that foreign law may apply in an action and the burden of proving foreign law

to enable the district court to apply it in a particular case." *Thackurdeen v. Duke Univ.*, No. 1:16-CV-1108, 2018 WL 1478131, at *7 (M.D.N.C. Mar. 23, 2018) (citation omitted); *see also Ferrostal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 218 (3d Cir. 2006) (stating plaintiff had burden of establishing foreign law and that such law differs from United States law); *Banque Libanaise Pour Le Com. v. Khreich*, 915 F.2d 1000, 1006 (5th Cir. 1990) (applying law of forum on grounds that plaintiff failed to carry burden of proof on foreign law); *Gan Teck Invs. Pte. Ltd.*, 2022 WL 1321290, at *5 ("Plaintiff has the burden of establishing foreign law."); *J.Y.C.C. v. Doe Run Res. Corp.*, 370 F. Supp. 3d 1031, 1047 (E.D. Mo. 2019) (defendants who moved for application of Peruvian law "failed to meet their burden"). Even the Ninth Circuit has clarified since *de Fontbrune* that "a party relying on foreign law has an obligation to raise the specific legal issues and to provide the district court with the information needed to determine the meaning of the foreign law." *G and G Prods. LLC v. Rusic*, 902 F.3d 940, 949 (9th Cir. 2018).

In evaluating the burden issue, however, this Court must consider the unique posture of this case. Frequently, one party seeks application of foreign law per Rule 44.1 and the court must decide whether to apply such foreign law or revert to applying the law of the forum. In these circumstances, most courts reasonably place the burden on the party seeking to apply foreign law in lieu of the forum's law. *See, e.g.*, *A.O.A. v. Rennert*, 350 F. Supp. 3d 818, 847 (E.D. Mo. 2018) ("If the movant fails to prove foreign law with reasonable certainty, a district court should apply the law of the forum."). While Plaintiffs raise the issue of foreign law via their Complaint, there is no avoiding the issue of DRC law based on the nature of Plaintiffs' claims.

At minimum, the Court disagrees with Defendants' suggestion that "if the matter is left up for debate after thorough consideration of the materials available to the parties, this Court would be required to resolve the matter against Plaintiffs." (Doc. 19 at 13). Rule 44.1 does not appear to

11

alter the general legal standards applicable to this motion to dismiss, which requires that the Court draw all inferences in favor of the nonmovant. *Young*, 244 F.3d at 627. In *In re Genetically Modified Rice Litigation*, a court in this district denied summary judgment after recognizing that it "should hesitate to grant summary judgment if the substance of the relevant [foreign] law is doubtful." No. 4:06-MD-1811 CDP, 2010 WL 1049837, at *5 (E.D. Mo. Mar. 8, 2010) (citing *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 211 (8th Cir. 1976)). The Court will similarly deny this motion to dismiss where the substance of DRC law remains doubtful.

Analyzing DRC Law

Defendants' motion to dismiss under Rule 12(b)(6) presents a straightforward threshold question: does Plaintiffs' adoption of M.S. comply with DRC law? (Doc. 19 at 2). If no, then Defendants appropriately denied the I-600 Petition. *See* 8 C.F.R. § 204.3(b)(1)(iv). If yes, Plaintiffs may be entitled to some relief under the APA. If the answer is unclear based on the parties' current filings, the Court may require additional analysis and expert opinions in order to make a final determination of law under Rule 44.1

The Department of State describes the DRC as a "nominally centralized constitutional republic." U.S. DEP'T OF STATE, *2018 Country Reports on Human Rights Practices: Democratic Republic of the Congo* (2018), *available at* http://www.state.gov/reports/2018-country-reports-on-human-rights-practices/democratic-republic-of-the-congo/ (last visited June 3, 2022). On February 18, 2006, the DRC adopted the Constitution of the Third Republic (the "DRC Constitution"). (Doc. 26 at 7). *See* Dunia P. Zongwe et al., *UPDATE: Overview of the Legal System of the Democratic Republic of the Congo (DRC) and Research*, § 3.1, N.Y.U. HAUSER GLOB. L. PROGRAM, GLOBALEX (July/August 2020) (Doc. 26-1) (hereinafter "*Zongwe Overview*"). Article 68 of the DRC Constitution identifies the President, Parliament,

Government, and Courts as the four "institutions of the Republic." (Doc. 26-3 at 15-16). Articles 40 and 41 concern the rights of families and children, while Article 215 addresses the role of international treaties and agreements. (*Id.* at 11, 52; Doc. 29 at 8). Articles 149 and 150 respectively establish that the "judicial power is independent of the Legislative Power and of the Executive Power," and "judges are only subject, in the exercise of their functions, to the authority of the law." (*Id.* at 34). Article 151 specifically recognizes that the executive power cannot "give orders to a judge in the exercise of his jurisdiction." (*Id.*).

The Civil Code governs private law in the DRC and has three parts: the law of persons ("Family Code"), property law, and the law of obligations. *Zongwe Overview*, § 6. The third book of the Family Code partly concerns adoptions. *Id.* at § 6.1. On July 15, 2016, per Law No. 16/008 amending and completing Law No. 87/010 of August 1, 1987 as well as Law No. 009/001 of January 10, 2009, the DRC amended its Family Code (hereinafter the "2016 Amendments"). (Doc. 19-1 at 13). The following amended articles expressly address intercountry adoption:

> **Article 923a**: While waiting for the implementing measured provided for Article 691a and the creation of the public body responsible for adoptions provided for in Article 652 of this Law, the examination of new cases of international adoption of Congolese children is suspended.
>
> **Article 653a**: The international adoption of a Congolese child can only be authorized for the State with which the Democratic Republic of Congo is bound by an International Convention on Adoption at the time of the judicial decision.

Article 923a references Article 652, which contemplates the Prime Minister creating a public body responsible for adoption. (Doc. 19 at 5). Nearly six years later, no such body has been established. (Doc. 19-1 at 13). Soon after adoption of the 2016 Amendments, the Department of State "strongly recommend[ed] against initiating adoption in the DRC." U.S. DEP'T OF STATE, INTERCOUNTRY ADOPTION NEWS AND NOTICES, *The Department of State*

13

*Strongly Recommends Against Adopting from the Democratic Republic of the Congo (DRC)*, April 12, 2017, *available at* http://travel.state.gov/content/travel/en/News/Intercountry-Adoption-News/drc-adoption-notice-12april2017.html (last visited June 3, 2022). In 2020, the Department of State issued a superseding alert stating that "intercountry adoptions from the DRC are not legally possible at this time." U.S. DEP'T OF STATE, INTERCOUNTRY ADOPTION NEWS AND NOTICES, *Democratic Republic of the Congo: Intercountry Adoptions and Exit Permits Suspended*, May 4, 2020, *available at* http://travel.state.gov/content/travel/en/News/Intercountry-Adoption-News/democratic-republic-of-the-congo--intercountry-adoptions-and-exi.html (last visited June 3, 2022). USCIS denied Plaintiffs' I-600 Petition in part because, per the 2016 Amendments, the "laws of DRC do not recognize intercountry-adoption judgments issued after July 15, 2016." (Doc. 19-1 at 13).

Plaintiffs began their adoption journey in the midst of these developments in DRC law. In May 2019, a Children's Court of Kinshasa approved Plaintiffs' adoption of M.S. despite the 2016 Amendments to the Family Code. (Doc. 1 at ¶ 15). In the NOID, USCIS expressed concern that this adoption judgment did "not provide any reference to the authority or impact of the [2016 Amendments] which suspended intercountry adoption" and "it therefore appears this court order was issued contrary to existing law." (Doc. 1-3 at 18).

On February 24, 2021, Plaintiffs attempted to rectify this issue by filing a motion to confirm judgment in the Children's Court. (*Id.* at 74). The Children's Court held a hearing and, in March 2021, issued a judgment directly addressing the 2016 Amendments. The court considered that the DRC is signatory to the United Nations Convention on the Rights of the Child and has adopted the Child Protection Code, which recognizes Children's Courts and establishes their jurisdiction over adoption of minors. (*Id.* at 76). *See* WHITE & CASE LLP AND

14

Emery Mukendi Wafwana & Assocs., *Access to Justice for Children: Democratic Republic of Congo*, § IV.A (June 2015), available at http://archive.crin.org/sites/default/files/drc_access_to_ justice.pdf (last accessed June 1, 2022) (citing DRC Child Protection Code, Title III, Chapter 1, art. 84). Article 6 of the DRC Child Protection Code recognizes that "the best interests of the child must be a paramount concern in all decisions and actions taken on their behalf." (Doc. 1-3 at 76). Having explicitly considered the 2016 Amendments, the Children's Court nevertheless found its previous judgment approving Plaintiffs' adoption of M.S. "to be in accordance with the laws of the [DRC]" and M.S. therefore "is an integral part of the family of the [Plaintiffs]." (*Id.* at 77). Plaintiffs also offered opinions supporting the legality of the Children's Court's judgment in their response to the NOID. (Doc. 19-1 at 16).

Despite Plaintiffs' efforts, Defendants still found that the Children's Court decision conflicts with DRC law. USCIS concluded that the expert opinions and March 2021 judgment of the Children's Court were "insufficient evidence to overcome the suspension order mandated by the DRC government" through the 2016 Amendments, and "as such the adoption order does not meet the requirements of 8 C.F.R. [§] 204.3(d)(1)(iv)." (*Id.* at 16-17). USCIS appears to have relied in part on a determination by the Adoptions Unit of the Kinshasa Embassy, which advised that a "court judgment approving an international adoption after [the 2016 Amendments] is contrary to DRC law and should be prima facie evidence of fraud and/or corruption." (*Id.* at 149). Individuals from the Kinshasa Embassy met and corresponded with numerous representatives from DRC's government, including individuals from the Ministry of Foreign Affairs ("MFA"), Ministry of Gender, Family, and Children ("MFGC"), Ministry of Justice ("MOJ"), and Immigration Authority. These representatives consistently advised the Kinshasa Embassy that intercountry adoptions are suspended per the 2016 Amendments. (*Id.* at 150-52).

15

The question before this Court is whether, at this early stage of litigation and drawing all inferences in Plaintiffs' favor, it can conclude that Plaintiffs' adoption of M.S. violates DRC law. At the outset, the Court notes that Defendants present a straightforward argument supported by numerous divisions of the DRC's executive branch. The 2016 Amendments explicitly suspended intercountry adoption pending creation of a public body responsible for adoption by the Prime Minister, which has not yet occurred. For the reasons discussed below, however, the Court is not convinced that Plaintiffs' adoption of M.S. violates DRC law and will accordingly deny Defendants' motion to dismiss.

First, Plaintiffs have offered multiple legal opinions in support of their position. Plaintiffs' DRC counsel, Martin Kabwika Tshimbalanga, and other attorneys submitted a legal opinion in response to the NOID. (Doc. 1-3 at 56-60) (the "Counsel Opinion"). The Counsel Opinion expresses the attorneys' view that the Children's Court has "sole jurisdiction over the international adoption of underage children in the DRC" and its judge has "flawlessly applie[d] the laws of [the DRC] and has prioritized the best interests of the child in his decision." (*Id.*). This Court certainly recognizes and considers the potential bias in an opinion offered by retained counsel when deciding what weight to afford the Counsel Opinion. *See In re Grand Jury Subpoena*, 912 F.3d 623, 634 (D.C. Cir. 2019) (finding declarations by retained counsel shed "little light" on issue of foreign law).

Plaintiffs also offer opinions from Diane Lipo Balili, an assistant university lecturer at Protestant University in the DRC ("Balili Opinion"), and a Magistrate in the Public Prosecutor's Office ("Magistrate Opinion"). (Docs. 26-4; 26-16). The Balili Opinion carefully considers the issue of judicial independence in light of the DRC Constitution before concluding that "the judiciary has exclusive competence to rule on the interpretation of a law" in the DRC. (*Id.* at 11).

16

The Magistrate Opinion recognizes that the 2016 Amendments govern intercountry adoptions but still finds that "all matters involving the child (*e.g.*, adoption) fall under the jurisdiction of the Children's Court" and the 2016 Amendments do "not violate the independence of the judiciary." (Doc. 26-16 at 5-6). The Court cannot reach a final, proper interpretation of DRC law where Plaintiffs have provided multiple sources of plausible expert testimony contravening Defendants' position. *See Chin-Teh Hsu*, 2020 WL 588322, at *6 ("[T]he disagreement over the proper interpretation of Taiwanese law is not one that can be resolved at this early stage of litigation, when Plaintiffs have provided plausible expert testimony to the contrary.").

Second, these expert opinions appear to have some footing under DRC law. Article 149 of the DRC Constitution specifically provides that the "judicial power is independent of the Legislative Power and of the Executive Power," and Article 151 states that the executive power may not "oppose the execution of a decision of justice." (Doc. 26-3 at 34). Plaintiffs cite legal scholarship arguing that the DRC Constitution "reaffirms the principle of judicial independence." Roger-Claude Liwanga, *Judicial Independence in the Democratic Republic of the Congo: Myth or Reality*, 56 J. AFRICAN L. 194, 201 (2012). Plaintiffs suggest that the Court should evaluate this disagreement over intercountry adoptions within the context of ongoing efforts by the DRC's executive branch to encroach on the judiciary's independence. (Doc. 26 at 8 n.8). Plaintiffs also provide the opinion of another Children's Court judge who approved an intercountry adoption despite the 2016 Amendments. (Doc. 26-15). This indicates to the Court that the Children's Court of Kinshasa judge who approved Plaintiffs' adoption does not stand completely alone in his interpretation of DRC law.

Third, the Court notes internal inconsistencies in the positions of DRC's executive branch divisions. Defendants rely substantially on the opinion of DRC's executive branch that the 2016

Amendments completely suspended intercountry adoptions. The Supreme Court advises federal courts to "accord respectful consideration to a foreign government's submission, but it is not bound to accord conclusive effect to the foreign government's statements" when evaluating foreign law. *Animal Sci. Prods.*, 138 S. Ct. at 1869. The Supreme Court suggests that relevant considerations "include the statement's clarity, thoroughness, and support; its context and purpose; the transparency of the foreign legal system; the role and authority of the entity or official offering the statement; and the statement's consistency with the foreign government's past positions." *Id.* at 1873-74.

At this early juncture, the Court lacks adequate information to evaluate each of the factors identified by the Supreme Court in *Animal Science Products*. The parties have offered competing interpretations of law from the DRC judiciary and executive. The MGFC informed the Kinshasa Embassy that intercountry adoptions are suspended and adoption decrees issued by the Children's Courts are null. (Doc. 19-2 at 10). But Plaintiffs represent that a representative of the MGFC "consented" to M.S.' adoption after the initial adoption judgment. (Doc. 26 at 20; Doc. 19-2 at 53). As to the MOJ, the Kinshasa Embassy merely informed USCIS of MOJ's view that the Children's Court's adoption judgment violated the 2016 Amendments. (Doc. 19-1 at 151). Yet the Kinshasa Embassy's advisory letter to USCIS omitted the following critical language from the MOJ's written response to questions regarding intercountry adoption:

> Question: Are the adoption judgments transmitted to [the Kinshasa Embassy] valid?
>
> MOJ Answer: These judgments were rendered in violation of article 923 bis of the Family Code which ordered the suspension of the review of intercountry adoption cases until the installation of the authority responsible for adoptions. **However, having been subject to no appeal, these judgments are legally binding and are enforceable.** (Doc. 19-1 at 171) (emphasis added).

This statement suggests that the executive branch disagrees with the court's judgment but respects its enforceability. In these circumstances, the Court cannot say that the Children's Court's judgment necessarily violates DRC law.

Finally, the Court believes that multiple factual disputes preclude a foreign law ruling at this early stage of litigation. Defendants' briefing and the CAR make extensive reference to the possibility that the Children's Courts are practicing fraud and corruption. (*Id.* at 149; Doc. 19 at 8 n.9). The Court certainly acknowledges the significant dangers posed by corruption and child smuggling in intercountry adoption efforts. (Doc. 29 at 10). But there is no information before the Court regarding fraud or corruption specific to the adoption judgment obtained by Plaintiffs. The parties also dispute whether intercountry adoptions have occurred in DRC since adoption of the 2016 Amendments. Plaintiffs specifically allege in their Complaint that USCIS has approved other I-600 Petitions for DRC adoptions after 2016. (Doc. 1 at ¶ 27). The Court must treat this alleged fact as true for purposes of this motion to dismiss. In their reply, Defendants insist that Plaintiffs "have not shown by any competence evidence a single case where an I-600 was approved and a visa was ultimately issued with respect to Congolese children following 2016." (Doc. 29 at 19). But the CAR does reference 45 processed adoptions from DRC to the United States since 2017. (Doc. 19-2 at 9).

The Advisory Committee Notes to Rule 44.1 state that the "court is free to insist on a complete presentation by counsel" in order to make a determination of foreign law. The Court recognizes that "[i]n a typical litigation involving foreign law, a motion to dismiss may be an appropriate time to decide the substance of another country's law that bears on the case at hand." *AIM Int'l Trading, LLC v. Valcucine S.p.A.*, No. 02 Civ. 1363 (PKL), 2003 WL 21203503, at *5 (S.D.N.Y. May 22, 2003). In these unique circumstances, however, the Court finds that Plaintiffs

have stated a plausible claim to relief and additional presentation is necessary on the issue of DRC law. *See Chin-Teh Hsu*, 2020 WL 588322, at *6 (declining to rule on issue of foreign law at early stage of litigation); *see also* 9A C. Wright & Miller, FED. PRAC. & PROC. § 2444 (3d ed. 2022) ("If proof before the district court on a summary judgment motion is not harmonious or is unpersuasive or inconclusive, the court should request a further showing by counsel, or engage in its own research, or direct that a hearing be held, with or without testimony, to resolve the issue."). The Court will therefore deny Defendants' motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 18) is **DENIED**. The Court will set a Status Conference by separate Order.

Dated this 3rd day of June, 2022.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE