UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JILL and ADAM TROWER ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:22-cv-00077-JAR |
| ) | |
| ANTHONY BLINKEN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on the parties' cross motions for summary judgment in this case involving an international adoption. (Docs. 45, 48). Plaintiffs are the prospective adoptive parents, Jill and Adam Trower. Defendants are Anthony Blinken as Secretary of the U.S. Department of State, Alejandro Mayorkas as Secretary of the U.S. Department of Homeland Security, Ur Mendoza Jaddou as Director of U.S. Citizen and Immigration Services (USCIS), Carol Cox as Consular Section Chief of the U.S. Embassy in the Democratic Republic of Congo (DRC), and the United States of America. For the following reasons, Plaintiffs' motion will be granted, and Defendants' motion will be denied.

### BACKGROUND

**Overview**

In April 2018, Baby M.S. was allegedly found abandoned near a trash heap in Kinshasa and was subsequently placed at the Ma Famille Orphanage. That summer, Plaintiffs began the process to adopt him, and by October 2018 they had filed an I-600A Application for Advance Processing of Orphan Petition stating their intent to adopt from the DRC. USCIS swiftly approved the application, thus enabling Plaintiffs to proceed with the adoption and file an I-600

1

Petition to Classify Orphan as an Immediate Relative.  Among the documents necessary for approval, Plaintiffs were required to submit, as pertinent here:

> Evidence of adoption abroad … in accordance with the laws of the foreign-sending country [in the form of]:
>
> A legible, certified copy of the adoption decree, if the orphan has been the subject of a full and final adoption abroad … .

8 C.F.R. § 204.3(d)(1)(iv)(A).

Plaintiffs were also required to submit evidence that the child was in fact an orphan (e.g., evidence that the child was abandoned or deserted, parents' death certificates, or parents' irrevocable releases).  8 C.F.R. § 204.3(d)(1)(iii).  In countries where State Department officials have reason to doubt the reliability of local court orders, USCIS may require additional evidence of abandonment. (Doc. 46-2 at p. 23).

While Plaintiffs navigated U.S. visa requirements, they concurrently pursued the adoption of M.S. in the DRC.  On April 4, 2019, a juvenile court in Kinshasa approved the adoption, making Plaintiffs the legal parents of M.S.  This decision was not appealed, and a certificate of non-appeal was issued May 24, 2019.  With this evidence of a final adoption abroad in hand, Plaintiffs then filed their I-600 petition on May 29, 2019.  However, in July 2020, the U.S. Embassy in Kinshasa recommended that USCIS deny the petition because DRC law prohibited international adoptions and the judgment was likely procured by fraud, as evidenced by several discrepancies in the local documentation.  Accordingly, on January 21, 2021, USCIS issued a notice of its intent to deny the petition because (1) the adoption was not granted in accordance with the laws of the foreign-sending country and (2) the evidence of abandonment was not credible. Only the first reason is before the Court on the present motions.

**The Road to Limbo**

In 2016, the DRC enacted legislation amending its family code to suspend all international adoptions pending the creation of a public agency to oversee the process.[1] Various exhibits in the record reflect that the DRC instituted this change and ceased issuing exit permits due to concerns of child trafficking and systemic corruption. DRC Law No. 16/008 of July 15, 2016, states in pertinent part:

**Article 923** *bis*[2]

While waiting for the implementation measures provided for [in] Article 691 *bis* and the creation of the public body responsible for adoptions provided for in Article 652 of this Law, the examination of new cases of international adoption of Congolese children is suspended.[3]

Articles 652 and 691 *bis*, referenced in Article 923 *bis*, charge the Prime Minister to create the agency and procedures governing international adoptions.[4] Six years later, no such body has been established. For a time, local juvenile courts continued to approve international adoptions despite these amendments. Article 674 gives the DRC Public Ministry standing to

---

[1] Article 202 of the DRC Constitution grants exclusive authority to the executive and legislative branches in matters of emigration. (Doc. 49-14 at p. 45; Doc. 49-7 at p. 3). The parties do not dispute the fact that the DRC Constitution provides for separation of powers and an independent judiciary.

[2] The French term "bis" signals an additional provision to the same numbered article.

[3] Additionally, Article 653 *bis* was enacted to limit the international adoption of DRC children to states with which the DRC is bound by an international convention on adoption. The United States is a party to the Hague Convention on the Protection of Children and Cooperation in Respect of Intercountry Adoption, but the DRC is not. It is undisputed that the adoption of M.S. falls outside the Hague Adoption Convention.

The DRC has ratified the United Nations Convention on the Rights of the Child. The United States has signed but not ratified this Convention. Defendants thus assert that the United States is not bound by this Convention, which moreover does not specifically relate to international adoption (beyond general principles stated in Article 21). The Court need to wade into this debate for reasons discussed *infra*.

[4] The Court is aware of variations in the wording of the multiple translations in the record and available online, as cited by the parties. Those variations are not material to the Court's disposition here. To accurately reflect the administrative record, the Court quotes the version that Defendants provided to Plaintiffs in the notice of denial.

challenge an adoption within three months of the judgment (Doc. 49-7 at p. 2), but the record lacks any indication whether the Ministry has ever appealed a judgment on the basis of Article 923 *bis*.

Defendants likewise continued to approve adoptions from the DRC for a time. According to State Department annual reports, from October 2016 to September 2020, the Department issued a total of twenty IR-3 visas for children adopted from the DRC. (Doc. 49-11). IR-3 visas are "only issued…where an I-600…has been approved by USCIS." *Id*. In April 2017, however, the Department "strongly recommend[ed] against initiating adoption in the DRC."[5]  In May 2019, just as Plaintiffs filed their I-600 petition, the Department urged USCIS to stop approving petitions until the DRC lifted its suspension on exit permits.  (Doc. 46-9 at p. 8-9).

In late 2019 and early 2020, the Department asked DRC authorities to clarify the status of international adoptions. (Doc. 19-1 at pp. 164-171).  Referring to nine particular cases involving American adoptive parents (Doc. 46-1), including Plaintiffs (Doc. 19-1 at p. 151), the DRC Ministry of Justice responded that, although these adoption judgments violated Article 923 *bis*, they were nonetheless binding and enforceable judgments because they had not been appealed.[6] (Doc. 19-1 at pp. 169, 171).  At the same time, the Ministry indicated that these children would not be granted exit permits and therefore recommended that the Department suspend visa

---

[5]  U.S. DEP'T OF STATE, INTERCOUNTRY ADOPTION NEWS AND NOTICES, *The Department of State Strongly Recommends Against Adopting from the Democratic Republic of the Congo (DRC)*, April 12, 2017, http://travel.state.gov/content/travel/en/News/Intercountry-Adoption-News/drc-adoption-notice-12april2017.html (last visited Nov. 22, 2022).

[6]  Exceptionally, however, the Ministry noted that a motion to contest one of the adoptions had been filed but not yet set for hearing. (Doc. 19-1 at pp. 169, 171).  The record does not reveal the identity of the movant or the basis for the challenge.

processing until the public agency contemplated by Article 923 *bis* could be created to regularize decisions made during the suspension. *Id*.

In July 2020, the U.S. Embassy in Kinshasa recommended that USCIS "place no weight on the validity of DRC adoption judgments issued after July 15, 2016." (Doc. 19-2 at p. 5-12). According to the State Department's 2020 report, only one adoption was approved during that fiscal year, and the Department was working with DRC authorities to address cases involving children adopted after the passage of Article 923 *bis*.  No visas were issued in 2021, and Department's annual report for that year indicates that it continued to seek guidance from DRC authorities on the authenticity and validity of adoption judgments issued by DRC courts. (Doc. 46-5 at p. 69, 74, 72).

Regrettably, Plaintiffs' bureaucratic odyssey coincided with the foregoing evolution of State Department practice and policy.  USCIS authorized Plaintiffs' adoption of Baby M.S. in November 2018.  As soon as the DRC adoption judgment became final in May 2019, Plaintiffs promptly filed their I-600 petition.  At that time, the United States was continuing to approve adoptions from the DRC, though State Department officials urged USCIS to stop granting petitions.  Six adoptions finalized in the DRC were approved in fiscal year 2019. (Doc. 49-11 at p. 31).  By the third quarter of 2020, however, the moratorium was absolute.  The U.S. Embassy in Kinshasa sent USCIS a memorandum in July 2020 summarizing its review of M.S.'s adoption file and identifying numerous suspicious circumstances. (Doc. 19-1 at p. 149-155).  For example, the "child finder" who claimed to have found M.S. had the same family name as the orphanage director, and her affidavit in support of the petition post-dated the adoption judgment by 49 days and was notarized four days later, two days before Plaintiffs filed their I-600 petition.  Given these and other indicators, the Embassy recommended that USCIS deny the petition due to

"confirmed fraud."⁷  (Doc. 19-1 at p. 155).  In January 2021, USCIS notified Plaintiffs of its intent to deny their petition for non-compliance with DRC law and failure to demonstrate abandonment.  In light of this notice, Plaintiffs filed a motion in the Kinshasa juvenile court seeking a declaration on the legality of their adoption.

In March 2021, that court issued a second judgment confirming the validity of Plaintiffs' adoption decree.  The court acknowledged the 2016 amendments but declared that: (1) the original decree conformed with other provisions of applicable DRC and international law prioritizing the best interests of the child; (2) the government's failure [to implement Article 923 *bis*] cannot prejudice those interests; and (3) the judgment carries the force of law and is valid and binding.  Notably, the judgment reflects that the DRC Public Ministry, represented by a deputy prosecutor, fully supported Plaintiffs' motion to confirm the judgment on the foregoing grounds.  (Doc. 19-1 at pp. 109-110, 113-114).  Plaintiffs submitted this second judgment to USCIS in support of its response to the notice of intent to deny.

In December 2021, USCIS issued a final notice of decision, again denying Plaintiffs I-600 petition because (1) the adoption was not completed in accordance with DRC law as required by 8 C.F.R. § 204.3(d)(1)(iv) and (2) in light of indicia of fraud in the local affidavits, Plaintiffs failed to establish that M.S. was actually abandoned, as required by the Immigration and Nationality Act (INA) § 101(b)(1)(F) and 8 C.F.R. § 204.3(b).⁸  (Doc. 19-1 at pp. 3-9).  As a

---

⁷ The report does not implicate Plaintiffs but rather local actors based on documents in the DRC court file.

⁸ Plaintiffs argue in their opening brief (Doc. 50) that USCIS did not cite fraud as a basis for denying their petition.  This assertion mischaracterizes the record.  The denial specifically cites multiple suspicions about the local affidavits and other papers supporting the adoption, leading the agency to find that evidence of abandonment not credible.  (Doc. 19-1 at pp. 3-9).  The agency's findings are supported by the Embassy's memorandum from its review of the local file, expressly recommending denial of the petition for "confirmed fraud."  (Doc. 19-1 at pp.149-155).  The Court does not opine on the merits of this issue at this stage but simply notes that the question of non-recognition on the basis of fraud is open and reserved for another day.

result of the foregoing evolution, Plaintiffs' adopted child, now four years old, remains in an orphanage without DRC exit papers or a U.S. visa.

**Procedural History**

In January 2022, Plaintiffs filed suit in this Court appealing the denial of their I-600 petition under the Administrative Procedure Act (APA), 5 U.S.C. § 706, asserting that the denial is "arbitrary and capricious, an abuse of discretion, lacks substantial evidence, and is otherwise not in accordance with law." (Doc. 1 at 10).  Specifically, Plaintiffs asserted that Defendants failed to follow proper investigative procedures set forth in 8 C.F.R. § 204.3(k) and other Department sources in arriving at the conclusion that the adoption was invalid.

Defendants moved to dismiss the case on the grounds that Plaintiffs' petition was properly denied because DRC law does not permit intercountry adoptions. (Doc. 18).  Both parties acknowledged that this issue requires a determination of foreign law under Fed. R. Civ. P. 44.1.  This Court denied Defendants' motion to dismiss in order to permit further development of the record on the question of foreign law.  (Doc. 30).  At a subsequent scheduling conference, the parties agreed to bifurcate discovery between the issue of DRC law (Phase I) and whether M.S. was in fact abandoned (Phase II).

In September 2022, parties filed their motions for summary judgment with respect to Phase I.  Defendants assert that the juvenile court's judgments clearly violate Article 923 *bis* of the DRC family code and therefore do not satisfy 8 C.F.R. § 204.3(d)(1)(iv).  Plaintiffs insist that the judgments are binding and enforceable and therefore warrant recognition by this Court. After careful consideration of the voluminous record and the parties' respective arguments, the Court is compelled to conclude, at least at this stage, that M.S.'s adoption decree constitutes "evidence of adoption abroad … in accordance with the laws of the foreign-sending country" in satisfaction of the regulation.  Plaintiffs are thus entitled to summary judgment on this issue.

7

## DISCUSSION

### Summary Judgment

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Meier v. City of St. Louis*, 934 F.3d 824, 827-28 (8th Cir. 2019).

### Administrative Procedure Act

The APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts. *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (2020). It requires agencies to engage in reasoned decision-making and directs reviewing courts to set aside any agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706. Under this narrow standard of review, a court is not to substitute its judgment for that of the agency but instead assess only whether the decision was based on a consideration of relevant factors and whether there has been a clear error of judgment. *Regents*, 140 S. Ct. at 1905. Judicial review of agency action is limited to the grounds that the agency invoked when it took the action. *Id*. at 1907.

### *Auer* Deference

As the Supreme Court has noted, a familiar problem arises in administrative law when an agency regulation is ambiguous as applied to a particular fact pattern. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2410 (2019). As a general rule, when an administrative regulation is ambiguous, courts defer to the agency's own interpretation. *Id*. at 2411 (citing *Auer v. Robbins*, 519 U.S. 452 (1997), and *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945)). *Auer* deference recognizes that resolving regulatory ambiguities often entails the exercise of judgment grounded

in policy concerns. *Id*. at 2413. When it applies, *Auer* deference gives an agency significant leeway to say what its own rules mean. *Id*. at 2418. For *Auer* deference to apply, the regulation must be genuinely ambiguous, and the agency's interpretation must be reasonable. *Id*. at 2415-16. The court must make an independent inquiry into whether the character and context of the agency's interpretation entitles it to controlling weight. *Id*. at 2416. A court need not defer when an agency changes its interpretation, disrupts expectations, and creates "unfair surprise." *Id*. at 2421. And some issues "may fall more naturally into a judge's bailiwick." *Id*. at 2417. When an agency has no comparative expertise in resolving a regulatory ambiguity, deference is not warranted.[9]

Here, the language of the applicable regulation, 8 C.F.R. 204.3(d)(1), requiring "evidence of adoption abroad … *in accordance with the laws of the foreign-sending country*" creates an ambiguity as applied to this unique factual situation because, as the undisputed facts reflect, M.S.'s adoption decree was entered in violation of Article 923 *bis* but is nonetheless valid and enforceable as a final judgment. Thus, the Court is called upon to determine whether the decree is "in accordance with" DRC law. While the Court appreciates the policy concerns behind Defendants' position that the decree does not satisfy the regulation, the Court need not defer to the agency's interpretation in this case. Although the Court does not find Defendants' interpretation unreasonable given their policy concerns, certainly Defendants' evolving practices disrupted Plaintiffs' expectations and created unfair and highly prejudicial surprise. Further,

---

[9]   *Kisor*'s concurring justices foreshadow an end to *Auer* deference. "The APA thus requires a reviewing court to resolve for itself any dispute over the proper interpretation of an agency regulation. A court that, in deference to an agency, adopts something other than the best reading of a regulation isn't "decid[ing]" the relevant "questio[n] of law" or "determin[ing] the meaning" of the regulation. Instead, it's allowing the agency to dictate the answer to that question." *Id*. at 2432 (J. Gorsuch concurring). "I agree with Justice Gorsuch's conclusion that the *Auer* deference doctrine should be formally retired." *Id*. at 2448 (J. Kavanaugh concurring).

Defendants have no comparative expertise in resolving the ambiguity, as the issue falls squarely into the Court's "bailiwick." The Court owes no deference to an agency's interpretation of foreign law. *Iracheta v. Holder*, 730 F.3d 419, 423 (5th Cir. 2013).

### Rule 44.1

Under Rule 44.1, the Court's determination of foreign law is treated as a question of law. *Animal Sci. Prods. v. Hebei Welcome Pharm. Co. Ltd.*, 138 S. Ct. 1865, 1873 (2018). Rule 44.1 "unshackles courts and litigants from the evidentiary and procedural requirements that apply to factual determinations." *de Fontbrune v. Wofsky*, 838 F.3d 992, 997 (9th Cir. 2016). When determining foreign law, the Court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. Fed. R. Civ. P. 44.1. In the spirit of international comity, a federal court should carefully consider a foreign state's views on the meaning of its own laws, but the court is not required to adopt that characterization. *Animal Science*, 138 S. Ct. at 1873. The appropriate weight will depend on the circumstances of the case. *Id*.

### Restatement Third

The Restatement (Third) of Foreign Relations Law (1987) provides "basic principles of international law" regularly relied upon by federal courts. *See e.g.*, *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1320-21 (2017) (looking to Third Restatement for guiding principles of international law on issues of statutory interpretation); *ReliaStar Life Ins. Co. v. IOA Re, Inc.*, 303 F.3d 874, 882 (8th Cir. 2002) (reasoning that nothing in the Third Restatement precluded a U.S. court from entering a judgment in a foreign currency). Section 481 provides that, "[e]xcept as provided in § 482, a final judgment of a court of a foreign state…confirming the status of a person…is entitled to

10

recognition in courts of the United States." Section 482 provides, however, that a court "need not" recognize a foreign judgment if the judgment was obtained by fraud. Third Restatement § 482(2)(c).

USCIS's policy manual adopts these principles. The manual states that, in general, USCIS accepts an adoption decree as primary evidence of an adoption, and the law of the jurisdiction that issued the decree determines its validity. (Doc. 49-1 at p. 2). However, USCIS may still question the validity of an adoption decree if there is credible and probative evidence that the adoption was granted due to official corruption or the use of fraud or material misrepresentation. *Id*. If there is such evidence, then the burden falls on the petitioner to establish that the adoption is valid under the law of the issuing jurisdiction. *Id*.

**Analysis**

The only issue before the Court in this Phase I is whether M.S.'s adoption decree constitutes "evidence of adoption abroad … in accordance with the laws of the foreign-sending country." The DRC Minister of Justice plainly acknowledged that the decree violates Article 923 *bis* but also confirmed that it is nonetheless facially valid and enforceable under DRC law. (Doc. 19-1 at pp. 169, 171). The record is consistent in this respect, and this Court agrees. A final, unappealed judgment cannot be deemed invalid merely because it contains an error of law. The parties in their briefing conduct a detailed merits analysis of the juvenile court's decisions under DRC and international law, with Defendants essentially claiming reversible error on appeal before this Court. But "when deciding whether to recognize a foreign judgment, courts may not reopen the merits of the case and consider whether foreign courts accurately applied their own law." *Henessy v. Wells Fargo Bank, N.A.*, 968 N.W.2d 684, 697 (Wis. 2022) (citing *Hilton v. Guyot*, 159 U.S. 113, 202 (1895)). A foreign judgment may not be collaterally attacked

11

upon the mere assertion that it was erroneous. *Sarl Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 479 (2d Cir. 2007) (stating, "we cannot second-guess the French court's finding"). *See also Medellin v. Dretke*, 544 U.S. 660, 670 (2005) (J. Ginsburg and J. Scalia concurring) (citing the Restatement and *Hilton* to support recognition of a foreign judgment notwithstanding assertions of error). "It is no ground for impeaching a judgment *in personam* of a foreign court that it is erroneous in matter of law or fact." 50 C.J.S. Judgments § 1333.

Mindful of the foregoing principles, the Court is inclined to recognize the adoption decree at this stage. To the extent non-recognition may be warranted on the basis of fraud, such matters will be examined in Phase II.[10]

**Post-Hoc Issues**

Finally, Defendant asserts additional theories in support of summary judgment that were not raised as the bases for denying Plaintiffs' I-600 petition. But judicial review of agency action is limited to the grounds that the agency invoked when it took the action. *Regents*, 140 S. Ct. at 1907. Post-hoc rationalizations are not proper. *Id*. Moreover, even considering such arguments if only to exhaust any doubt, the Court finds them unpersuasive.

For one, Defendants submit that the Kinshasa juvenile court exceeded its limited jurisdiction by purporting to adjudicate M.S.'s emigration status. But the court's judgments say no such thing; the court simply granted and later confirmed the adoption. The question of M.S.'s exit papers is still left to the discretion of DRC emigration authorities.

Additionally, Defendants urge the Court to consider diplomatic comity, warning that a ruling in Plaintiffs' favor would essentially constitute an endorsement of foreign corruption and

---

[10] The Court has discretion whether to recognize a foreign judgment obtained by fraud. *Wilson v. Marchington*, 127 F.3d 805, 810 and n.5 (9th Cir. 1997) (noting that the grounds for non-recognition enumerated in Third Restatement § 482 are discretionary).

12

would severely damage international relations. While the Court acknowledges the sensitive circumstances in which this case arose, the Court is not persuaded that geo-political implications should factor into its analysis. Despite Defendants' concerns, the facts before the Court establish that a DRC prosecutor supported Plaintiffs' motion to confirm the adoption judgment, the government had standing to challenge the judgment and did not do so, and the DRC Vice Minister of Justice confirmed that final, unappealed adoption judgments entered in violation of Article 923 *bis* are nonetheless binding and enforceable. It is not the role of this Court to police alleged corruption or scrutinize an independent judiciary in a sovereign nation.

## CONCLUSION

The discrete issue in this Phase I is only whether Defendants properly denied Plaintiffs' I-600 petition on the basis that the Kinshasa juvenile court's judgment was not rendered "in accordance with" DRC law in that the court violated the 2016 amendments to the DRC family code. This Court concludes that the juvenile court's judgment is nonetheless valid and does constitute sufficient *prima facie* evidence of adoption abroad "in accordance with the laws of the foreign-sending country." 8 C.F.R. § 204.3(d)(1)(iv). However, the question remains, to be examined in Phase II pursuant to the parties' stipulation, whether non-recognition is ultimately warranted due to fraud as contemplated by Restatement Third § 482 and USCIS policy.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for summary judgment is **GRANTED** as to the Phase I issue of DRC law.  (Doc. 48).  The parties are directed to confer and submit by **February 6, 2023**, a joint proposed schedule for further proceedings.

Dated this 30th day of January, 2023.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE